COURT OF APPEALS
DECISION
DATED AND FILED

March 29, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1669**

Cir. Ct. No. **2021FO807**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

VILLAGE OF GENOA CITY,

PLAINTIFF-RESPONDENT,

V.

APRIL LYNN TUDOR,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] April Lynn Tudor appeals from an order granting the Village of Genoa City's (Village) motion to voluntarily dismiss this case with

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

prejudice and denying her request for an award of attorney fees and costs. Tudor does not oppose the dismissal, but argues that she was entitled to an award of attorney fees and costs under *Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 597 N.W.2d 744 (1999), because the Village frivolously continued to litigate this case past the point at which it knew its claim lacked merit. As explained below, *Jandrt* does not control this case, Tudor was not entitled to an award of attorney fees and costs, and the circuit court did not erroneously exercise its discretion in denying her request. Accordingly, this court affirms.

## BACKGROUND

¶2 In August 2021, a Village police officer began issuing daily citations to Tudor for trespassing and zoning violations because fencing that had been installed on her property allegedly extended onto her neighbors' lots. Tudor received more than forty trespassing citations in all, including the one at issue in this case, which alleged a violation of a Village code provision that adopts Wisconsin's trespass to land statute, WIS. STAT. § 943.13. *See* VILLAGE OF GENOA CITY, WIS., CODE § 194-1 (2004).[2]

¶3 The Village commenced separate actions for each citation, all of which Tudor moved to dismiss in October 2021. Tudor argued that even if the fencing extended beyond the boundaries of her lot, WIS. STAT. § 943.13(1m)(a) did not apply to a fence because it only prohibits a *person* from "[e]nter[ing] any

---

[2] Chapter 194 of the Code of the Village of Genoa City is available online at https://www.vi.genoacity.wi.gov/ordinances/chapter-194-peace-and-good-order.

enclosed, cultivated or undeveloped land of another … without the express or implied consent of the owner or occupant." Sec. 943.13(1m)(a).

¶4 The circuit court addressed Tudor's motion at a hearing in February 2022. The court agreed with Tudor that "a fence isn't entering anywhere. A fence is inanimate, it's not moving, it's not going from one place to another place, it's set in a specific location. So Ms. Tudor can't be trespassing when she's not entering the property and an inanimate object is sitting over the lot line." The court acknowledged that "the Village might be able to give her a citation [for] the first day she put the fence up because obviously someone had to go on the property." But the court stated that the Village "[could not] give a citation for trespass every single day thereafter," describing that as "pretty clearly improper." Consistent with these comments, the court dismissed all of the actions except the one pertaining to the citation for the day the fence was installed.

¶5 In early April 2022, the Village filed a motion to voluntarily dismiss the remaining action pursuant to WIS. STAT. § 805.04(1)-(2). With its motion, the Village submitted a letter it had received from Tudor's counsel stating that Tudor would not object to the voluntary dismissal if the Village agreed to pay her $14,926.20 in attorney fees and costs. The Village did not respond to this proposal before filing its motion, so Tudor filed a brief objecting to any dismissal that was not accompanied by an award of attorney fees and costs. She argued that she was entitled to such an award under *Jandrt* because the Village had "frivolously maintained" the remaining action against her. This argument was grounded in a purported dispute as to the exact location of the boundaries of Tudor's lot. Because no court had determined the boundaries, Tudor contended, the Village could not possibly prove that she had trespassed. Tudor also accused the Village of seeking a voluntary dismissal to "shirk its legal duty to compensate

[her] for" frivolously continuing to litigate the case. She did not, however, file a motion seeking the fees and costs as a sanction against the Village.

¶6    At a hearing on May 2, 2022, the circuit court granted the Village's motion and denied Tudor's request for attorney fees and costs. Among its reasons for granting the dismissal, the court emphasized that the Village sought a dismissal with prejudice which, "[a]bsent something significant," generally is not accompanied by an award of costs and fees under *Bishop v. Blue Cross & Blue Shield United of Wisconsin*, 145 Wis. 2d 315, 426 N.W.2d 114 (Ct. App. 1988). The court also observed that Tudor had not shown that she "complied with the procedures outlined in the statute for frivolousness," an apparent reference to WIS. STAT. § 802.05. Tudor appeals.

## DISCUSSION

¶7    Tudor contends that this court should review the circuit court's decision de novo because this court must interpret WIS. STAT. §§ 802.05 and 805.04, apply *Jandrt*, and determine whether the Village frivolously continued this action. In her reply brief, she argues that the court erred as a matter of law in denying her request for fees and costs because *Jandrt* "makes clear that frivolously maintained actions mandate compensation of fees to innocent defendants." The Village, in contrast, contends that the court's decision is reviewed only for an erroneous exercise of discretion.

¶8    This court agrees with the Village. As Tudor acknowledges, the question presented by this appeal is whether the circuit court properly granted the Village's motion without awarding her costs and attorney fees. The Village moved for voluntary dismissal under WIS. STAT. § 805.04, which permits a court to grant a voluntary dismissal "upon such terms and conditions as the court deems

4

proper." Sec. 805.04(2).[3] This language affords a court discretion in setting the terms and conditions of a voluntary dismissal. Because Tudor challenges "the appropriateness of the terms and conditions deemed proper by the [circuit] court" in connection with a voluntary dismissal, appellate review is deferential. *See Dunn v. Fred A. Mikkelson, Inc.*, 88 Wis. 2d 369, 380, 276 N.W.2d 748 (1979) (reviewing voluntary dismissal conditioned on partial payment of defendant's legal expenses for erroneous exercise of discretion); *Bishop*, 145 Wis. 2d at 320 ("[W]hether payment of attorney fees may be made one of the 'proper' terms of dismissal under [§] 805.04(2) … is discretionary with the [circuit] court.").

¶9       However, in exercising discretion, a circuit court must correctly identify and apply the governing law. *See State v. Tarlo*, 2016 WI App 81, ¶6, 372 Wis. 2d 333, 887 N.W.2d 898. This court "independently determine[s] … whether the [circuit] court applied the correct standard of law." *State v. Bucki*, 2020 WI App 43, ¶22, 393 Wis. 2d 434, 947 N.W.2d 152. This court will affirm the circuit court's decision "if [it] applied the proper law to the relevant facts of record and used a rational process to arrive at a reasonable result." *Clark v. Mudge*, 229 Wis. 2d 44, 50, 599 N.W.2d 67 (Ct. App. 1999).

¶10     Tudor has not established that the circuit court erroneously exercised its discretion in denying her request. The court correctly identified *Bishop* as setting forth the law governing an award of attorney fees and costs in connection with a voluntary dismissal with prejudice. And it correctly identified the nature of

---

[3] Tudor is correct that a voluntary dismissal was not available to the Village under WIS. STAT. § 805.04(1) because Tudor filed her responsive pleading before the Village filed its motion for voluntary dismissal and because Tudor refused to stipulate to the dismissal unless it was accompanied by an award of attorney fees and costs.

the dismissal as the significant factor in the analysis. In *Bishop*, this court observed that an "award of attorney fees and costs is recognized as a proper term or condition" where a voluntary dismissal is *without* prejudice because such a dismissal leaves open the possibility that the plaintiff may refile the lawsuit later. *Bishop*, 145 Wis. 2d at 317-18. That possibility "means [that] the defendant has been put to expense [in the dismissed lawsuit] literally for nothing." *Id.* at 318 (quoting *Dunn*, 88 Wis. 2d at 377; first alteration in original). Thus, an award of attorney fees and costs in such cases can "protect the defendant from economic prejudice." *Dunn*, 88 Wis. 2d at 378.

¶11 In contrast, a voluntary dismissal *with* prejudice does not raise these concerns because "the defendant is protected from the risk of further litigation." *Bishop*, 145 Wis. 2d at 318. In addition to this protection, awarding a defendant attorney fees when a lawsuit is dismissed with prejudice would run counter to the long-standing "American Rule" that each side typically pays for its own attorney. *See Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶72, 342 Wis. 2d 29, 816 N.W.2d 853; *Bishop*, 145 Wis. 2d at 320.

¶12 The *Bishop* court did not foreclose the possibility that an award of attorney fees in connection with a dismissal with prejudice could be appropriate, but it recognized that the circumstances that would justify such an award would be rare. *See Bishop*, 145 Wis. 2d at 319-20. Specifically, the *Bishop* court cited a hypothetical example of a litigant who "made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." *Bishop*, 145 Wis. 2d at 320 (quoting *Colombrito v. Kelly*, 764 F.2d 122, 134-35 (2d Cir. 1985)). Tudor does not argue that the Village's conduct fits this description.

6

¶13    The dismissal with prejudice shields Tudor from the risk of further trespass litigation and ensures that she has not "been put to expense literally for nothing." *Bishop*, 145 Wis. 2d at 318 (quoting *Dunn*, 88 Wis. 2d at 377). Because Tudor had this lawsuit resolved in her favor and on the merits, the circuit court could reasonably conclude that an award of attorney fees and costs was not a proper term or condition to impose on the dismissal.[4]

¶14    Tudor raises several challenges to the circuit court's decision, but none is persuasive. First, Tudor contends that the court should have awarded her attorney fees and costs under a multi-factor test set forth in *Clark*. This court disagrees. *Clark* does not apply here because it concerned a dismissal *without* prejudice, which is materially different from a dismissal *with* prejudice, as explained above. *See Clark*, 229 Wis. 2d at 47-48. Moreover, the multi-factor test set forth in *Clark* is intended to guide a court in deciding whether to grant a motion for voluntary dismissal, not whether to condition such a dismissal upon payment of the defendant's attorney fees and costs. *See id.* at 49 (listing "[f]actors to consider when reviewing a motion for voluntary dismissal"). *Clark* neither controls nor provides useful guidance on the issue raised in this appeal.

¶15    Tudor's next (and primary) argument is that *Jandrt* "superseded" this court's decision in *Bishop* and required the circuit court to award Tudor attorney fees and costs because the Village voluntarily dismissed a case it had frivolously continued to litigate. *Jandrt* involved a personal injury action in

---

[4] The dismissal order does not specifically state that the action was dismissed on the merits, but it does grant the Village's "motion to voluntarily dismiss the … case with prejudice." This court has construed a "dismissal with prejudice" to be "equivalent in all practical respects to an adjudication on the merits." *State v. A.G.R., Jr.*, 140 Wis. 2d 843, 847, 412 N.W.2d 164 (Ct. App. 1987).

which several plaintiffs alleged that they suffered birth defects as the result of their mothers' workplace exposure to certain chemicals. *Jandrt*, 227 Wis. 2d at 537-38. Nine months after filing suit, the plaintiffs moved to voluntarily dismiss their case, having determined that the expert work necessary to establish causation would be too expensive. *Id.* at 545-46. The defendant moved for sanctions, arguing that the plaintiffs had filed and continued to litigate frivolous claims. *Id.* at 546. After a two-day hearing, the circuit court granted the motion based on its determination that the plaintiffs' claims lacked "a reasonable basis in fact or law" because there was no evidence to establish causation and the plaintiffs had not sufficiently investigated that issue before filing the lawsuit. *Id.*

¶16 On appeal, our supreme court held that the circuit court had erroneously exercised its discretion in determining that the claims were frivolously filed. *Id.* at 561-62. But it agreed that the plaintiffs had violated WIS. STAT. § 814.025 (1997-98) by frivolously continuing to litigate their claims. *Jandrt*, 227 Wis. 2d at 573. That statute required a court to award costs and reasonable attorney fees if it found that a party or its attorney knew or should have known that an action lacked a "reasonable basis in law or equity." Sec. 814.025(1), (3)(b) (1997-98).

¶17 Tudor's reliance on *Jandrt* is misplaced for multiple reasons. To start, *Jandrt* does not mention, much less supersede, *Bishop*. Though both cases involved voluntary dismissals, they addressed separate issues that arose under separate statutes. *Bishop* considered a circuit court's authority to award attorney fees and costs under the voluntary dismissal statute, WIS. STAT. § 805.04. *Bishop*, 145 Wis. 2d at 317. *Jandrt*, in contrast, analyzed an award of sanctions for the frivolous commencement and continuation of a lawsuit under two other statutes, WIS. STAT. §§ 802.05 and 814.025 (1997-98). *Jandrt*, 227 Wis. 2d at 538-39.

Tudor cites no legal authority in support of her contention that ***Bishop*** no longer has precedential value in cases involving voluntary dismissals with prejudice, and this court's research has not uncovered any such authority.

¶18    In addition, ***Jandrt*** was decided under sanctions statutes that were later repealed and replaced with materially different provisions.[5]  Six years after ***Jandrt*** was decided, our supreme court repealed WIS. STAT. §§ 802.05 and 814.025 (2003-04) and replaced them with a recreated version of § 802.05 (2005-06).  S. CT. ORDER 03-06, 2005 WI 38, 278 Wis. 2d xiii, xiv (eff. July 1, 2005).  The recreated version of § 802.05, which continues in effect today, requires a party seeking sanctions to prepare a separate motion describing the sanctionable conduct, serve the motion on the nonmoving party, and allow the nonmoving party twenty-one days to withdraw or correct the conduct.  *See* Sec. 802.05(3)(a)1.  The party seeking sanctions may file the motion only if the nonmoving party does not withdraw or correct the challenged conduct during the twenty-one day "safe harbor" period.  *See **Trinity Petroleum, Inc. v. Scott Oil Co.***, 2007 WI 88, ¶27, 302 Wis. 2d 299, 735 N.W.2d 1.

¶19    Tudor did not show the circuit court that she complied with this procedure.  She did not show that she prepared and served a separate motion for sanctions to start the safe harbor period.  Nor does the record indicate that she filed such a motion with the court.  Instead, Tudor included a request for sanctions in

---

[5] For this same reason, Tudor's reliance on ***Gowan v. McClure***, 185 Wis. 2d 903, 519 N.W.2d 692 (Ct. App. 1994), is misplaced.  Like ***Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.***, 227 Wis. 2d 531, 597 N.W.2d 744 (1999), ***Gowan*** considered whether attorney fees and costs should have been awarded under statutes other than WIS. STAT. § 805.04, specifically WIS. STAT. § 814.025, which is no longer in effect, and WIS. STAT. § 804.12.  *See **Gowan***, 185 Wis. 2d at 914.

her objection to the Village's voluntary dismissal motion. That was not sufficient to comply with WIS. STAT. § 802.05. *See Franklin v. Beth*, No. 05-C-0916, 2007 WL 325800, at *4 (E.D. Wis. Jan. 31, 2007) (denying request for sanctions under federal corollary to § 802.05, Federal Rule of Civil Procedure 11, where plaintiffs did not file a separate motion for sanctions but instead requested sanctions in their response brief to defendants' motion to dismiss).[6] Tudor cannot fault the circuit court for failing to analyze whether the Village continued to litigate a frivolous claim when she did not follow the procedure necessary to trigger that analysis. Her claimed entitlement to sanctions fails for this reason alone.

¶20 Tudor asserts that it was "impossible" for her to follow the procedure set forth in WIS. STAT. § 802.05(3)(a)1. because she did not obtain the information that revealed the lack of factual merit to the Village's claim until the Village responded to her discovery requests, which occurred after it filed its motion for voluntary dismissal. Tudor did not raise this "impossibility" argument below and thus arguably forfeited it. *See, e.g.*, *Soletski v. Krueger Int'l, Inc.*, 2019 WI App 7, ¶¶23-24, 385 Wis. 2d 787, 924 N.W.2d 207. In addition, the argument is not persuasive. Tudor could have prepared and served a motion for sanctions after obtaining the discovery that allegedly revealed the Village's claim to be frivolous and asked the circuit court to defer a ruling on the Village's voluntary dismissal motion. But had she done so, the Village, having already filed its motion, almost certainly would have agreed to withdraw its claim, thereby foreclosing an award of sanctions under § 802.05. In effect, by filing its motion

---

[6] In a comment to Supreme Court Order 03-06, our supreme court recognized that courts applying WIS. STAT. § 802.05 may look to cases applying Federal Rule of Civil Procedure 11 for guidance because § 802.05 is patterned after Rule 11. S. CT. ORDER 03-06, 2005 WI 38, 278 Wis. 2d xiii, xvii (eff. July 1, 2005).

for voluntary dismissal before Tudor could prepare and serve a motion for sanctions, the Village availed itself of the opportunity afforded by the safe harbor provision in § 802.05(3)(a)1. before Tudor could trigger the safe harbor period.

¶21   In addition to Tudor's failure to follow WIS. STAT. § 802.05's procedure for seeking sanctions, § 802.05 law no longer mandates the imposition of sanctions if a circuit court determines that a lawsuit has been frivolously maintained. *See Trinity Petroleum*, 302 Wis. 2d 299, ¶28.  When our supreme court decided *Jandrt*, the applicable sanctions statute stated that a court "shall award" costs and fees if it found that an action was frivolously continued.  WIS. STAT. § 814.025(1) (1997-98).  The statute's use of "shall" made the imposition of sanctions mandatory.  *Sommer v. Carr*, 95 Wis. 2d 651, 653 n.1, 291 N.W.2d 301 (Ct. App. 1980), *rev'd on other grounds*, 99 Wis. 2d 789, 299 N.W.2d 856 (1981). In contrast, the current version of WIS. STAT. § 802.05 states that "the court may impose an appropriate sanction" if a party maintains a claim that lacks evidentiary support.  Sec. 802.05(2)(c), (3).  Wisconsin courts "generally construe the word 'may' in a statute as allowing for the exercise of discretion."  *Linda L. v. Collis*, 2006 WI App 105, ¶72, 294 Wis. 2d 637, 718 N.W.2d 205.  Thus, even if Tudor had properly served and filed a motion for sanctions, and even if the circuit court had determined that the Village continued this action frivolously, it would not have been required to award her attorney fees and costs.[7]

---

[7] In addition, WIS. STAT. § 895.044, which neither party cites, authorizes the imposition of sanctions for continuing to litigate a frivolous action.  But it does not make such an award mandatory in all cases.  Section 895.044(2)(a) provides that a circuit court "[m]ay"—but is not required to—award sanctions against a party who "withdraws, or appropriately corrects" a frivolously maintained action after being served with a motion for sanctions.

11

¶22    In the end, Tudor's arguments rest on the incorrect premise that Wisconsin law requires that she be awarded attorney fees and costs. As explained above, WIS. STAT. § 802.05 no longer entitles a party forced to defend against frivolous claims to an award of sanctions. *See* WIS. STAT. § 802.05(3). It leaves the decision whether to impose a sanction to the circuit court's discretion. ***Id.*** And it affords an offending party the chance to avoid sanctions by withdrawing or correcting sanctionable conduct during the twenty-one-day safe harbor period. Sec. 802.05(3)(a)1. The circuit court was not required to award Tudor attorney fees and costs under § 802.05, and it reasonably concluded that such an award was not appropriate under WIS. STAT. § 805.04(2).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

12